**In re Mary Ellen GOLASH, Debtor.**

**No. 09–27973JAD.**

United States Bankruptcy Court, W.D. Pennsylvania.

April 12, 2010.

Jason J. Mazzei, Mazzei & Associates, Pittsburgh, PA, for Debtor.

### MEMORANDUM and ORDER
### of COURT

JEFFERY A. DELLER, Bankruptcy Judge.

The matter before the Court is the *Objection to Confirmation of Chapter 13 Plan* ("Objection") filed by Dollar Bank, FSB, ("Dollar Bank"). Through its Objection, Dollar Bank argues that the Debtor's Chapter 13 Plan dated October 29, 2009 (the "Plan") cannot be confirmed as it seeks to modify the contractual interest rate of a mortgage Dollar Bank holds on the Debtor's principal residence, (the "Mortgage").

After examining the undisputed facts, this Court is not persuaded by Dollar Bank's argument. Bankruptcy Code § 1322(b)(2), known as the "antimodification" provision, prohibits a Debtor from modifying a claim secured by a debtor's principal residence. 11 U.S.C. § 1322(b)(2). However, section 1322(c)(2) creates an exception to this provision, if the last payment under the mortgage agreement is due before the final payment under the plan. 11 U.S.C. § 1322(c)(2).

A proposed claim modification pursuant to section 1322(c)(2) must comply with the requirements of section 1325(a)(5) of the Bankruptcy Code. 11 U.S.C. § 1322(c)(2). Section 1325(a)(5) requires, that absent the

creditor's acceptance of the plan or the debtor's surrender of the collateral, the creditor must retain its lien and receive property whose total "value, as of the effective date of the plan, ... is not less than the allowed amount of such claim." 11 U.S.C. § 1325(a)(5)(B)(ii). As an additional requirement, if the property to be distributed is in the form of periodic payments, the payments "shall be in equal monthly amounts." 11 U.S.C. § 1325(a)(5)(B)(iii)(I).

As long as the requirements of section 1325(a)(5)(B) are met, claims subject to modification may be restructured "at an interest rate more favorable to the debtor than the rate on the original note." *In re Joyner*, No. 08–05647–8–JRL, 2008 WL 4346467, at *2 (Bankr.E.D.N.C. Sept. 17, 2008); *see also In re Paschen*, No. 99–42771–JTL, 2000 WL 33743100, at *2 (Bankr.M.D.Ga. Aug. 10, 2000) (citing *In re Leola Terrell*, Case No. 99–70556–JTL (Bankr.M.D.Ga. Aug. 20, 1999)); *In re Gray*, No. 07–07380–ESL, 2008 WL 5068849, at *3 (Bankr.D.P.R. Nov. 25, 2008) (citing *In re Ibarra*, 235 B.R. 204, 209–13 (Bankr.D.P.R.1999)).

The undisputed record clearly indicates the case at bar is one of the rare instances where the section 1322(c)(2) exception to the anti-modification provision applies. First, the parties do not dispute the Mortgage will mature prior to the due date for the final payment under the Debtor's proposed sixty (60) month Plan. (*See* Dkt. # 17, ¶ 4). Second, at the contested hearing, counsel for the Debtor agreed to modify the proposed Plan to pay the present value of Dollar Bank's claim, $12,061.39. (*See* Audio Recording of Hearing Held, Courtroom D, April 7, 2010, (10:10–10:11 AM)). Third, the Debtor's proposed Plan

allows for monthly payments in equal amounts.[1] (*See id.* at (10:18–10:19 AM)). Therefore, as the requirements of section 1325(a)(5)(B) are satisfied, and the Debtor's Mortgage will mature prior to the due date for the last payment under the proposed Plan, the Mortgage interest rate is modifiable.

■ To determine the appropriate rate of interest that should apply, this Court will join several others within the Third Circuit and utilize the "formula approach" adopted by the Supreme Court in *Till v. SCS Credit Corp.*, 541 U.S. 465, 124 S.Ct. 1951, 158 L.Ed.2d 787 (2004). *See e.g., Sovereign Bank, F.S.B. v. Finnegan (In re Finnegan)*, 358 B.R. 644, 650–651 (Bankr. M.D.Pa.2006) (bankruptcy court applying the formula approach in *Till* to determine the appropriate interest rate on the portion of a claim secured by a motor vehicle); *Nowlin v. Tammac Corp.*, No. Civ.A.05–1528, 2005 WL 2660377 (E.D.Pa. Oct. 17, 2005) (holding the appropriate interest rate for a crammed down claim in bankruptcy, is the rate calculated under the "formula approach"); *In re Flores*, No. 05–38630/JHW, 2006 WL 4452973 (Bankr. D.N.J. Mar. 29, 2006) (holding the formula approach articulated in *Till* was the proper method of determining the interest rate that should be applied to unpaid real estate taxes).

In *Till* the plurality opinion of four Justices held the appropriate method of calculating interest on a loan subject to § 1325(a) should be determined by adding a "risk adjustment" figure to the national prime rate. *Till*, 541 U.S. at 479, 124 S.Ct. 1951. The U.S. Supreme Court left calculation of the risk adjustment figure to the discretion of the bankruptcy courts, but insisted a hearing must be held where it

---

1. To accommodate for the difference between the present value of Dollar Bank's claim, ($12,061.39), and the reduced amount listed in the proposed Plan, ($11,579.00), the Debt- or agreed to an $18 per month increase in the Plan payment. (*See* Audio Recording of Hearing Held, Courtroom D, April 7, 2010, (10:18–10:19 AM)).

would be the creditor's burden to present evidence that the risk adjustment figure should be adjusted upward. *Id.*

At the contested hearing, Debtor's counsel submitted that the current prime rate was 3.25%. (*See* Audio Recording of Hearing Held, Courtroom D, April 7, 2010, (10:10–10:12 AM)). Debtor's counsel also proffered the risk of default was quite low, as the Debtor was substantially current on her payments to the Chapter 13 Trustee and the proposed Plan would be funded by automatic withdrawals from the Debtor's bank account. *See id.* Following this proffer, Dollar Bank did not present any evidence to indicate the risk adjustment figure should be increased, insisting only that the "anti-modification" provision of 1322(b)(2) applied as the Mortgage was held on the Debtor's principal residence. When provided an opportunity by the Court, both parties opted to forgo a further *Till* hearing as a result of the nominal amount in dispute.[2] *See id.*

Given the Supreme Court's decision in *Till* places the burden of proof on the creditor to increase the risk adjustment figure, and no evidence was offered, this Court will accept the Debtor's proposed interest rate of 6%.[3]

**WHEREFORE,** this **12th** day of **April, 2010,** the Court hereby **ORDERS, ADJUDGES** and **DECREES** Dollar Bank's Objection to confirmation of the Debtor's Plan is **OVERRULED.**

**SO ORDERED.**

---

**2.** Counsel for Dollar Bank proffered that a 1.99% difference in interest on an outstanding balance of $12,061.39 would only result in a difference of $679.40 over the life of the Plan. (*See* Audio Recording of Hearing Held, Courtroom D, April 7, 2010, (10:10–10:11 AM)).

**3.** The Court also notes Dollar Bank conceded that, in the event this Court found the interest rate was modifiable, 6% would be an acceptable rate. (*See* Audio Recording of Hearing Held, Courtroom D, April 7, 2010, (10:14–10:16 AM)).